**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SECURENET SOLUTIONS GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AGENT VIDEO INTELLIGENCE, INC,<br><br>Defendant. | Case No. 2:15-cv-01857-JRG-RSP<br><br>LEAD CASE<br><br>JURY TRIAL DEMANDED |
| SECURENET SOLUTIONS GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AVIGILON CORPORATION, and AVIGILON USA CORPORATION,<br><br>Defendants. | Case No. 2:15-cv-01858-JRG-RSP<br><br>JURY TRIAL DEMANDED |
| SECURENET SOLUTIONS GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ON-NET SURVEILLANCE SYSTEMS INC.,<br><br>Defendant. | Case No. 2:15-cv-01860-JRG-RSP<br><br>JURY TRIAL DEMANDED |

- 2 -

| | |
|---|---|
| SECURENET SOLUTIONS GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SIGHTLOGIX, INC., <br><br> Defendant. | Case No. 2:15-cv-01861-JRG-RSP <br><br> JURY TRIAL DEMANDED |

### JOINT MOTION FOR ENTRY OF THE PARTIES' PARTIALLY OPPOSED PROTECTIVE ORDER

Pursuant to the Court's January 27, 2016 Order (Dkt. 12), Plaintiff SecureNet Solutions Group, LLC and Defendants Agent Video Intelligence, LLC, On-Net Surveillance Systems, Inc., and SightLogix, Inc., hereby submit their Partially Opposed Protective Order, attached hereto as Exhibit 1, for the Court's consideration.[1] The parties disagree on (i) the number of pages of source code that should be presumed reasonable to print, (ii) the use of a thumb drive to transfer copies of source code electronically, and (iii) the scope of the proposed prosecution bar.

**Plaintiff's Proposals**

Prosecution Bar (¶ 11):

Plaintiff proposes that an attorney who views "HIGHLY SENSITIVE MATERIAL" (i.e., attorneys eyes only and source code documents) be subject to the same prosecution bar contained in this Court's sample protective order, which does not bar trial counsel's participation in any

---

[1] Avigilon Corp. and Avigilon USA Corp. are not participants in this joint motion, due to the stay of their portion of this case pending settlement between Plaintiff and those defendants.

reexamination or PTO review proceedings.[2] In contrast, Defendants propose barring attorneys who have access to "Highly Sensitive Material" from participating in any way in any reexamination, inter partes review, post grant review, or covered business method review. Defendants also propose that the bar should only apply to Plaintiff.

1. Scope of Prosecution Bar

When deciding whether to impose a prosecution bar, the Court must balance the risk of potential harm to the party requesting the restrictions with the right of the opposing party to have the benefit of counsel of its choice. *See In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373, 1380 (Fed. Cir. 2010).

Plaintiff's proposal satisfies *Deutsche Bank's* balancing test. It bars attorneys who view "Highly Sensitive Material" from "prepar[ing], prosecut[ing], supervis[ing], or assist[ing] in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one year after its conclusion, including any appeals." Yet it allows SecureNet's trial counsel to participate in any PTO review or reexam that Defendants initiate, thereby protecting SecureNet's right to use counsel of its own choice.

---

[2] Plaintiff also opposes Defendants' amendment of the Protective Order to recite "prosecution of" before the phrase "any reexamination, post-grant review, covered business method review, or *inter partes* review proceedings." Defendants' proposal suggests that all of the listed activities are "prosecution," when they are not.

Defendants' proposal is unnecessary, as failing to extend the prosecution bar to PTO review and reexamination proceedings will not harm Defendants. *Inter partes* reviews, covered business method reviews, and post-grant reviews are administrative trials. SecureNet would not have a right to amend its claims in any of these proceedings. Instead, it would have to submit a motion to amend, which could be opposed by the Defendant who petitioned for the administrative review. Even in an *ex parte* reexamination, SecureNet would be barred from adding new material to the patent. Accordingly, this and other courts have generally rejected the application of prosecution bars to prevent trial counsel's participation in reexaminations and other post-grant PTO proceedings. *See, e.g., Pall Corp. v. Entegris, Inc.,* 655 F.Supp.2d 169, 173 (E.D.N.Y.2008) (noting that "unlike prosecution of an initial patent application, the Patent Act expressly curtails the scope of reexamination, prohibiting any claim amendment that would enlarge the scope of the initial patent"); *see also Mirror Worlds, LLC v. Apple, Inc.,* Case No. 08–88, 2009 WL 2461808, at *2 (E.D.Tex. Aug. 11, 2009) (noting that claims "can only be narrowed during reexamination; they cannot be broadened" and therefore concluding that "the risk of harm" to the defendant to be "greatly limited"); *Document Generation Corp. v. Allscripts,* Case No. 08–479, 2009 WL 1766096, at *2 (E.D. Tex. June 23, 2009) (stating that because "the reexamination process prohibits claim amendments that would enlarge the scope of the initial patent, Defendants' fears of expanded claim scope are largely misplaced").

In addition to being unjustified, Defendants' proposed prosecution bar would put SecureNet at a disadvantage both here and in any PTO. Not allowing the patentee's litigation counsel to continue representation causes "serious concerns about a policy that would encourage defendants to file for reexamination [or review] while excluding plaintiff's counsel from participating in the reexamination [or review], thereby forcing a plaintiff to defend a patent in

two separate venues with two teams of attorneys." *Mirror Worlds, LLC v. Apple, Inc.,* No. 6:08 CV 88, 2009 WL 2461808, at *1 (E.D. Tex. Aug. 11, 2009); *see also Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 185 (D. Del. 2010) (refusing to bar trial counsel from participating in reexamination). And insofar as SecureNet's trial counsel may participate in arguments regarding claim scope, that activity is identical to trial counsel's role in this trial and should not be prohibited. *See Grobler v. Apple Inc.*, Case No. 12-01534 JST (PSG), 2013 WL 3359274, at *2 (N.D. Cal. May 7, 2013). ("[I]f the PTO and district court are just two fronts in the same battle, allowing a limited role for a patentee's litigation counsel while prohibiting counsel from crafting or amending claims is only reasonable.").

To the extent this Court's sample prosecution bar must be amended, Plaintiff proposes that the protective order state: "This Prosecution Bar shall not apply to any reexamination, post-grant review, covered business method review, or *inter partes* review proceedings initiated by any Party, or any related appeals." If a limited bar for these proceedings is necessary, SecureNet proposes, in the alternate, that the following wording be added to the end of the above sentence: "except that those persons who access HIGHLY SENSITIVE MATERIAL shall not participate in or supervise drafting of claim amendments in any ex parte reexamination filed by a party to this Action." This would bar any SecureNet attorney who had viewed sensitive material from participating in claim drafting in the only proceeding where Defendants would not be able to oppose amendments by SecureNet.

### 2. Bilateral vs. Unilateral Prosecution Bar

Defendants proposal that the prosecution bar be unilateral is pure gamesmanship. Its practical effect would be to allow Defendants' counsel to participate in both this litigation and any reexam or PTO review, while forcing Plainitiff to utilize two entirely different teams of

attorneys that were barred from coordinating with each other in any way. This is exactly the type of unfair disadvantage that has led most courts to reject or limit application of prosecution bars to litigation counsel participation in reexams, IPRs, CBM reviews, and post-grant review proceedings. See, e.g., *Mirror Worlds, LLC v. Apple, Inc.,* No. 6:08 CV 88, 2009 WL 2461808, at *1 (E.D. Tex. Aug. 11, 2009).

The few cases cited by Defendants that explicitly rejected a bilateral prosecution bar are distinguishable by the fact that the Plaintiffs in those cases were unable to identify any specific confidential information (e.g., source code) or other risk that justified a prosecution bar. *See, e.g., NovelPoint Tracking, LLC*, No. 2:12-cv-00716-JRG-RSP at *2 (". . . Plaintiff does not contend that Defendants will have access to the sort of information that would necessitate a bilateral prosecution bar."); *see also Cheah,* No. C-08-4872, 2009 WL 1190331, at *3 (May 4, 2009) (holding that applying bar to Plaintiff's litigation counsel was unnecessary because they did not do any prosecution work), and *Ring Plus, Inc. v. Cingular Wireless, LLC*, No. 06-cv-159, 2007 U.S. Dist. LEXIS 102190, at *11-12 (E.D. Tex. Jul. 24, 2007) (holding that Plaintiff did not warrant protection because it had not invested money in developing products).

Here, in contrast, Plaintiff has sensitive information that warrants a prosecution bar. SecureNet identified five products in its P.R. 3-1 disclosures: "Hawk-I" Veterinary Video Surveillance product for safety, security, and business process improvement at veterinary facilities; "Virtual Safety Fabric" Smart Crane and Construction Video Surveillance product for safety, security, and business process improvement at construction sites and crane sites; Video surveillance product for safety, security, and business process improvements at colleges and universities; "Smart Baby and Hospitals" Video surveillance product for safety, security, and business productivity at maternity wards and hospitals; and a General Safety, Security and

Business Monitoring Product. SecureNet will produce source code for one or more of those products. Plaintiff will be harmed if Defendants are allowed to access Plaintiff's HIGHLY SENSITIVE INFORMATION and use that information to draft claims in Defendants' patents or otherwise misappropriate the work done by SecureNet. This is particularly true if Defendants are allowed to share this material with their non-attorney employees, e.g., software engineers, involved in prosecuting patent applications and developing Defendants' products, as Defendants propose. Moreover, attorneys at Gutride Safier have participated in reexams and *inter partes* reviews, and this expertise is relevant to SecureNet's choice of Gutride Safier as outside counsel.[3] Thus, unlike *Cheah*, application of the bar to Plaintiff's counsel will actually have an effect on both Plaintiff and its litigation counsel.

Moreover, the cases Defendants cite do not support a unilateral prosecution bar that applies to parallel PTO proceedings. Only two of those cases, *Novelpoint Tracking, LLC v. Hewlett Packard Co.*, No. 2:12-CV-716, Dkt. 49 (E.D. Tex. July 2, 2013) and *Smartflash v. Apple Inc.*, No. 6:13-CV-447, Dkt. 139 (E.D. Tex. December 17, 2013), were decided after the current *inter partes* and covered business method reviews were created. *Novelpoint* did not address the concerns raised here regarding parallel PTO proceedings, and Smartflash explicitly rejected the complete bar on reexam participation proposed by Defendants. *See Smartflash*, id., at *4 (rejecting complete bar on litigation counsel's particpation in reexams, and holding that only bar on claim drafting was necessary). None of the other cases Defendants cite acknowledge the possibility of parallel PTO proceedings. Thus, none of the cases cited by Defendants actually support a unilateral prosecution bar in the form that they propose.

---

[3] Gutride Safier LLP attorney Anthony J. Patek is a registered patent attorney who has handled reexams and IPRs on behalf of litigation clients in the past.

Limitation of RESTRICTED – ATTORNEYS' EYES ONLY materials to in-house counsel (¶ 9): For paragraph 9, Plaintiff again proposes the language present in this Court's sample protective order, which limits the in-house attorneys to whom RESTRICTED – ATTORNEYS' EYES ONLY material to those who "exercise no competitive decision making authority on behalf of the client." Paragraph 9 refers back to paragraphs 5(a-c) and (e-g), which identify several classes of persons who may view RESTRICTED – ATTORNEYS' EYES ONLY materials (specifically: outside counsel, outside counsel's administrative personnel, in-house counsel, outside consultants or experts, independent litigation support services, and the Court and its personnel). Of these, only in-house counsel could possibly exercise "competitive decision making authority on behalf of the client." Accordingly, there is no need to amend "in-house counsel" to "persons." Moreover, Defendants' proposal to allow non-attorneys to access Plaintiff's "RESTRICTED ATTORNEY'S EYES ONLY materials is incongruent with their proposal that those non-attorneys be exempt from any prosecution bar. Any person who has access to HIGHLY SENSITIVE MATERIAL produced by SecureNet should be subject to the prosecution bar of ¶ 11.

Use of Thumb Drive and Printing Limits (¶ 10): Plaintiff proposes allowing Plaintiff's experts to transport blocks of source code via encrypted thumb drive. This proposal is intended solely to avoid the waste and burden of printing hundreds of pages of source code and physically transporting those pages back and forth from the site where source code review occurs. Transporting blocks of source code via encrypted thumb drive presents no more risk than transporting it via paper copy. Either way, only small blocks of the source code will be transported. While Plaintiff intends to treat any blocks of source code with utmost care, either

medium could be lost or misplaced. In that unlikely event, the data in the thumb drive will be encrypted, while any information printed on paper will be immediately accessible.[4]

With respect to presumptively reasonable printing limits, Plaintiff proposes that up to 50 pages of continuous blocks of source code, and up to 250 pages of Source Code Material in one day, shall be presumed reasonable (with longer printouts requiring a showing of need). These presumptive page limits are very reasonable given that software code uses page space in a very inefficient manner.

**Defendants' Position**

Prosecution Bar (¶ 11): A prosecution bar prevents a patent holder from using a party's proprietary information during prosecution or post-grant challenge proceedings to modify claims so that they read on the disclosing party's products. As reflected in the parties' proposals, all parties agree that a prosecution bar should apply to Plaintiff. The only remaining disputes are: (1) whether the bar should apply to Defendants, even though Plaintiff sells no products and has no plans to do so; and (2) whether the bar should exclude post-grant challenge proceedings, even though patentee can modify claim scope in such proceedings.

1. Because Plaintiff Sells No Products, the Prosecution Bar Should Not Apply to Defendants

Plaintiff has not provided adequate justification for a bilateral prosecution bar and this Court has been unwilling to place such a burden on Defendants without adequate justification. *See Novelpoint Tracking, LLC v. Hewlett Packard Co.*, No. 2:12-CV-716 (E.D. Tex. July 2, 2013); *see also Smartflash v. Apple Inc.*, No. 6:13-CV-447 (E.D. Tex. May 12, 2014).

---

[4] Though not addressed here specifically, Plaintiff has proposed parallel wording in ¶ 10(k)) to apply that paragraph to the proposed thumb drive.

There is no rationale for imposing a prosecution bar on Defendants in this case. Plaintiff does not currently sell products and has not indicated that any products are forthcoming. Therefore, there is no corresponding risk to Plaintiff that Defendants could prosecute patents that relate to any Plaintiff product based on Plaintiff's confidential information. In fact in their P.R. 3-1 (F) Disclosures, Plaintiff makes clear that the products listed are no longer operational and the disclosures are "only based on Securenet's best recollection and review of relevant available product sales literature."  Plaintiff for the first time in this motion references having relevant source code from one or more of these non-operational products.  It is unclear to the Defendants in what context Plaintiff intends to use such source code or why non-operational source code should be given the same protection as source code for Defendants' current products.

Plaintiff may argue that Plaintiff's confidential information could purportedly be used to influence Defendants' own prosecution activity in some indeterminate way. But courts have declined to impose a bilateral bar in similar circumstances. *See Cheah IP LLC v. Plaxo, Inc., No. C-08-4872,* 2009 WL 1190331, at *3 (N.D. Cal. May 4, 2009) ("Plaintiff has not articulated anything more than a generalized non-specific fear about the risk of disclosure of its own confidential technical information by Defendants' litigation attorneys."); *Ring Plus, Inc. v. Cingular Wireless, LLC*, No. 06-cv-159, 2007 U.S. Dist. LEXIS 102190, at *11-13 (E.D. Tex. Jul. 24, 2007) (explaining that that "[a] one-way prosecution bar is not uncommon" and is appropriate in circumstances where "the parties are not similarly situated," such as in the case of a non-practicing entity who has sued a product manufacturer) (citing cases); *Commissariat a L'Energie Atomique v. Dell Computer Corp.*, No. Civ. A 03-484, 2004 WL 1196965, at *2 (D. Del. May 25, 2004) (same); *In re Papst Licensing, GmbH Patent Litig.*, No. MDL-1278, 2000 WL 554219, at *4 (E.D. La. May 4, 2000) (ordering prosecution bar because "[c]ounsel's ability

to file new claims in existing and pending patents based on confidential information discovered during the course of this litigation poses an unacceptable opportunity for inadvertent disclosure and misuse"); *Interactive Coupon Mktg. Group, Inc. v. H.O.T.! Coupons, LLC*, No. 98 C 7408, 1999 WL 618969, at *4 (N.D. Ill. Aug. 9, 1999) (ordering that "all of plaintiff's attorneys who are privy to confidential information obtained from defendant in discovery shall not participate in the prosecution of any patent application relating to the subject matter of the patents in suit"); *Motorola, Inc. v. InterDigital Tech. Corp.*, No. Civ. A 93-488, 1994 WL 16189689, at *3 (D. Del. Dec. 19, 1994) (same).

    2. <u>The Prosecution Bar Should Prevent Plaintiff from Participating in All Types of PTO-Related Activity Where Claims May be Amended</u>

Contrary to Plaintiff's assertion that "failing to extend the prosecution bar to PTO review and reexamination proceedings will not harm Defendants," the risk of harm to Defendants is particularly high if a member of Plaintiff's trial team with access to Defendants' "Highly Sensitive Material" is allowed to participate in PTO review and reexamination proceedings where claim amendments are possible. While Plaintiff is correct that in certain PTO proceedings their right to amend would be subject to motion practice, Defendants should not be forced to rely on motion practice in a future proceeding to shield themselves from potential harm. Nor is it relevant that one or more of the Defendants would have initiated any future PTO proceeding. When, as here, Plaintiff is a non-practicing entity asserting multiple patents, Defendants are entitled to an enhanced level of protection to ensure that their confidential information is not used by Plaintiff, even unwittingly, to bolster their claims in this or future cases.

The importance of this issue is even more acute with respect to potential re-examination proceedings, where the Plaintiff's ability to amend its claims is of right, rather than requiring motion practice. Plaintiff suggests that because they will not have the right to get broader claims

in a re-examination, that the enhanced protection requested by Defendants is unjustified. Plaintiff's argument fails, however, since even Plaintiff's ability to get more claims (even if not broader ones) issued in a re-examination could harm defendants. For example, additional claims added during re-examination could serve as the basis for accusing additional products, or allow the Plaintiff to avoid prior art raised by the Defendants in this case. At the same time, there is no reason to distinguish between re-examinations and other PTO proceedings with respect to the prosecution bar in this case. The danger of harm to Defendants, if any of Plaintiff's trial counsel with access to sensitive material is allowed to participate in claim amendments during PTO proceedings of any type, is real. At minimum, the Court should bar any SecureNet attorney who had viewed sensitive material from participation in claim drafting in any PTO proceeding.

<u>Limitation of RESTRICTED – ATTORNEYS' EYES ONLY materials to in-house counsel</u> (¶ 9):

Defendants propose that the provisions of Paragraph 9 extend to "persons," because of the fact that each Defendant does not have in-house counsel, and there may arise a need for designated persons without competitive decision-making authority to have access to Restricted-Attorney's Eyes Only protected materials to the extent reasonably necessary for this litigation. Plaintiff's proposal effectively restricts anyone at Defendants from access to this material, which runs counter to the intent this Court's model protective order, allowing certain persons without decision-making ability to have access to restricted material for purposes of the efficient litigation management and potential case resolution. Plaintiff does not even suggest that it will be prejudiced if Defendants' proposal is accepted. Accordingly, Defendants' suggested language for this paragraph should be adopted by the Court.

Use of Thumb Drive and Printing Limits (¶ 10): Paragraph 10 concerns procedures for requesting and providing printouts of source code produced in this action. Defendants and Plaintiff agree that source code productions require special protections and review procedures due to the increased sensitivity of source code material and how such material is maintained in the normal course of business. Defendants and Plaintiff agree that the primary review of such material will occur at a dedicated source code computer with appropriate security procedures. Plaintiff proposes in Section 10(g) the added ability to use a USB stick for copying up to 25GB of Source Code Material along with notes regarding the same. This ability to copy is not present in or contemplated by the Court's sample Protective Order. The Plaintiff also proposes the blanket ability to print 100 pages of a continuous block of source code and 250 pages of Source Code Material in a single session. These large quantities are not present or contemplated by the Court's sample Protective Order. Allowing Plaintiff to print source code in large blocks and to copy the highly confidential material to thumb drives would defeat the purpose of the review procedures the parties negotiated. Allowing printing of source code in large amounts or removing such materials on thumb drives presents a high risk of inadvertent disclosure of extremely sensitive material. Moreover, it allows the reviewing party to short circuit the review procedures in place, i.e. requesting printouts of or copying to a thumb drive large swaths of code meant to be reviewed at a secure terminal. Defendants' proposal is reasonable and the approach has been approved in this district. *E.g., Plaintiff, LLC v. Apple, Inc.,* No. 6:13-cv-447-MHS-KNM, Dkt. 139 at 5-6 (E.D. Tex. May 12, 2014); *Innovative Automation, LLC,* No. 6:13-cv-460-LED-KNM, Dkt. 62 at 2 (E.D. Tex. Nov. 22, 2013). It presumptively allows printing of small segments of relevant code, and permits Plaintiff to request additional printouts for good cause shown. Copying or printing of substantial amounts of highly confidential materials without a

showing of good cause is inappropriate.  The burden to Plaintiff and the risk to Defendants are appropriately balanced, and Defendants' proposal should be adopted.

DATE: March 28, 2016                              Respectfully Submitted,


                                  */s/ Anthony J. Patek*

Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Todd Kennedy, Esq.
Anthony J. Patek, Esq.
Marie McCrary, Esq.
100 Pine St., Suite 1250
San Francisco, California 94111
Telephone: (415) 789-6390
Facsimile: (415) 449-6469
aseth@gutridesafier.com
todd@gutridesafier.com
marie@gutridesafier.com

Charles Ainsworth
Parker Bunt & Ainsworth
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Facsimile: (903) 533-9687
charley@pbatyler.com

ATTORNEYS FOR PLAINTIFF

*/s/ Jeffrey Mann (with permission)*
Deborah Race
Texas State Bar No. 16448700
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
903-561-1600
drace@icklaw.com

Ian G. DiBernardo
Jeffrey Mann
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane

New York, New York 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: idibernardo@stroock.com
Email: jmann@stroock.com

Attorneys for Defendant
On-Net Surveillance Systems, Inc.

*/s/ Bobby Lamb (with permission)*
Bobby Lamb
Melissa Smith
Gillam & Smith
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
wrlamb@gillamsmithlaw.com
melissa@gillamsmithlaw.com

COUNSEL FOR SIGHTLOGIX, INC.

*/s/ Gaston Kroub (with permission)*
Andrew W. Spangler
State Bar No. 24041960
Spangler Law P.C.
208 N. Green St., Suite 300
Longview, TX 75601
Telephone: (903) 753-9300
Facsimile: (903) 553-0403
Email:spangler@spanglerlawpc.com

KROUB, SILBERSHER & KOLMYKOV PLLC

Gaston Kroub
gkroub@kskiplaw.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone No.: (212) 323-7442

ATTORNEYS FOR AGENT VIDEO
INTELLIGENCE, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that the all counsel of record, who are deemed to have consented to electronic service are being served March 28, 2016, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/Anthony J. Patek*
ANTHONY J. PATEK
